**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ARMANDO COLON,**

                                        **Plaintiff,**


                    **v.**                                                    **9:98-CV-1302**
                                                                              **(FJS/GHL)**

**GLENN S. GOORD,** Commissioner of the New
York State Department of Correctional Services,
in his official capacity; **DONALD SELSKY,**
individually and in his official capacity as
Director of Special Housing and Inmate
Discipline of the New York State Department
of Correctional Services; **JAMES STINSON,**
Superintendent of Great Meadow Correctional
Facility, individually and in his official capacity;
**KENNETH COLLYER,** Hearing Officer and
Counselor at Great Meadow Correctional
Facility, individually and in his official capacity;
**RICHARD DOLING,** Hearing Officer at
Great Meadow Correctional Facility,
individually and in his official capacity; **JANE
PARHAM,** Counselor and Employee Assistant
at Great Meadow Correctional Facility,
individually and in her official capacity;
**CAROL CHAPMAN,** Counselor and Employee
Assistant at Great Meadow Correctional Facility,
individually and in her official capacity; and
**C.O. BREWER,** Special Housing Unit
Officer at Great Meadow Correctional Facility,
individually and in his official capacity,

                                        **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**OFFICE OF STEPHEN LANCE CIMINO**                 **STEPHEN LANCE CIMINO, ESQ.**
307 South Clinton Street, Suite 300
Syracuse, New York 13202-1250
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**            **SENTA B. SIUDA, AAG**
**STATE ATTORNEY GENERAL**
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Magistrate Judge Lowe's May 20, 2008 Report and Recommendation and Plaintiff's objections thereto.

### II. BACKGROUND

On July 30, 1998, Plaintiff filed his original complaint in this prisoner civil rights action pursuant to 42 U.S.C. § 1983.[1]  *See* Dkt. No. 1.  On November 22, 1999, Plaintiff filed his amended complaint, in which he generally alleged, among other things, that Defendants Kenneth Collyer and Jane Parham violated his constitutional rights when they wrongfully caused him to be subjected to administrative segregation at Great Meadow Correctional Facility from May 5, 1995, to July 12, 1995, for attempting to escape from prison.[2]  *See* Dkt. No. 38.  On September 25, 2001, the Court granted Defendant's motion to dismiss for failure to state a claim, *see* Dkt. Nos. 70-71; and Plaintiff appealed through appointed counsel on October 5, 2001, *see* Dkt. No. 72.

_____

[1] At the time that he commenced this action, Plaintiff was appearing *pro se*.

[2] Plaintiff also asserted claims against other correctional officials related to incidents that are not relevant to the issues currently before the Court.

Regarding the issue of whether the three-year statute of limitations governing § 1983 claims brought in federal courts sitting in New York barred Plaintiff's claims against Defendants Collyer and Parham, the Second Circuit vacated the Court's judgment and remanded the action for a hearing to determine whether Plaintiff timely filed his complaint, taking into consideration any equitable tolling to which Plaintiff might be entitled.  The Second Circuit explained that, "while [it] ha[d] never held solitary confinement alone sufficient to entitle a prisoner to equitable tolling, prison conditions that *prevent* a prisoner from timely filing may require equitable tolling." *See* Dkt. No. 77 at 3 (citation omitted).

On May 22, 2006, Magistrate Judge Lowe held the evidentiary hearing that the Second Circuit mandated, at which Plaintiff testified on his own behalf and Correctional Sergeant Bernard Lonczack testified for Defendants. *See* Report and Recommendation dated May 20, 2008, at 4.  The facts established at the hearing show that, on May 5, 1995, Plaintiff was subjected to "keeplock confinement" in his cell at Great Meadow Correctional Facility for allegedly attempting to escape from prison. *See id.*  On May 8, 1995, Plaintiff was transferred from his cell to the Special Housing Unit at Great Meadow Correctional Facility, where he was served with a copy of the Administrative Segregation Recommendation, which informed him that his segregation was based on the confidential information of two sources. *See id.* at 5.  Between May 19 and May 31, 1995, Plaintiff's administrative segregation hearing was held; and Plaintiff was further informed about the nature of the confidential information that formed the basis for his segregation and was sentenced to an indefinite period of administrative segregation confinement. *See id.*

On June 26, 1995, Plaintiff sent a letter to First Deputy Superintendent John J. Malloy,

-3-

complaining that the confidential informants in question were motivated by "fear or dislike" of Plaintiff.  *See id.*  On July 12, 1995, Deputy Superintendent Malloy concluded that the confidential information in question was of a "dubious" nature and ordered Plaintiff's immediate release from administrative segregation; Plaintiff was released the same day.  *See id.*  On July 14, 1995, the Acting Director of the Department of Correctional Services' ("DOCS") Special Housing/Inmate Discipline Program affirmed Plaintiff's assignment to administrative segregation, finding that the assignment "was conducted in accordance with established procedures;" however, he noted that Plaintiff was no longer assigned to administrative segregation.  *See id.* at 6.

On November 2, 1995, Plaintiff was again confined to the Special Housing Unit at Great Meadow Correctional Facility, convicted of conspiring to escape from prison, and sentenced to five years of confinement in the Special Housing Unit.  *See id.*  In December 1995, Plaintiff was transferred to Green Haven Correctional Facility, where he served the remainder of his Special Housing Unit confinement until 2000, and where the events relevant to the issue of equitable tolling currently before the Court occurred.

The prison conditions that Plaintiff testified prevented him from timely filing his complaint and, thus, entitle him to equitable tolling, relate primarily to a delay in typing and copying services at Green Haven Correctional Facility.  *See* Report and Recommendation dated May 20, 2008, at 7, 11.  Plaintiff testified at the hearing that, in January 1998, he was aware of the three-year statute of limitations governing his § 1983 complaint.  *See id.* at 7.  He also testified that he was aware that he could both file a handwritten complaint with the Court and subsequently file a typewritten amended complaint.  *See id.*  However, he stated that, because he

wanted his complaint to be "neat" and "as professional as possible," he submitted, in late January 1998, a handwritten draft of his complaint to the law library officer assigned to the Special Housing Unit so that it could be typed.  *See id.*  In February 1998, Plaintiff was informed that his complaint had not yet been typed because he was on a waiting list and "just had to be patient." *See id.* at 8.  Then, in March 1998, Plaintiff was informed that his complaint had not been typed because it had been deemed illegible; therefore, he rewrote and resubmitted his complaint for typing.  *See id.*  The typing of Plaintiff's complaint was further delayed in April 1998, when the inmate law clerk responsible for typing complaints was transferred to another prison and, again, during a one-week period in May 1998, when the entire facility was in "lock down" and all regular inmate activity was ceased.  *See id.* at 9.  Plaintiff eventually received his typed complaint some time around June 4, 1998.  *See id.* at 10.  Subsequently, on July 28, 1998, Plaintiff requested that the law library type other forms to accompany the complaint, such as the summonses and *in forma pauperis* application, which were typed and returned to Plaintiff the following day.  *See id.*  On July 30, 1998, Plaintiff requested that an additional eight pages of documents relating to this action be typed; Plaintiff received those typed pages the same day.  *See id.*

At various times between late January 1998 and July 30, 1998, Plaintiff requested to have a number of documents photocopied in the law library but experienced various delays in receiving those photocopies.  *See id.*  Specifically, Plaintiff requested that the law library photocopy other exhibits that he wished to attach to his complaint in order to "strengthen" it.  *See id.* at 12.  Plaintiff also requested, some time around June 9, 1998, to have eight photocopies made of his typed complaint.  *See id.*  Plaintiff's copies were delayed when the entire facility was

in "lock down" during a one-week period in May 1998, and during an eighteen-day period in June and July 1998, when the copy machine was not operational. *See id.* Plaintiff eventually received his photocopies some time in late July 1998. *See id.* During the time that Plaintiff was experiencing delays due to the breakdown of the copy machine, Green Haven Correctional Facility had an "emergency copy procedure" in place that allowed an inmate to have copies made on an expedited basis on another copy machine at the facility, provided that the inmate could show that those copies needed to be sent to the court by a specific date. *See id.* at 13. Although this policy was published in the Green Haven Law Library Policy and Procedure Manual, Plaintiff was unaware of the emergency copy procedure and, therefore, did not use it. *See id.* Additionally, during the time at issue, Plaintiff was able to make unlimited copies of handwritten documents using carbon paper, which Plaintiff did not do. *See id.* at 14.

After holding the hearing and reviewing the parties' post-hearing submissions, Magistrate Judge Lowe determined that Plaintiff had filed his complaint after the three-year statute-of-limitations period had expired and that neither the delay in typing services nor the delay in copying services constituted an "extraordinary circumstance" that would warrant equitable tolling of the statute of limitations. *See id.* at 17, 19-20. Accordingly, Magistrate Judge Lowe recommended that this Court dismiss the remainder of Plaintiff's claims, i.e., those claims against Defendants Collyer and Parham, as time-barred. *See id.* at 22.

## III. DISCUSSION

**A.      Standard of review**

In evaluating a magistrate judge's report and recommendations, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When a party timely objects to the magistrate judge's recommendations, the court is required to review the contested portions *de novo*.  *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).  On the other hand, with respect to uncontested portions of the magistrate judge's recommendations, the court need only review the face of the record for clear error.  *See id.* (citations omitted).

**B.      The requirements for the application of equitable tolling**

In his Report and Recommendation, Magistrate Judge Lowe found that Plaintiff constructively filed his complaint on July 30, 1998, that his claims accrued, at the very latest, on July 12, 1995, that the applicable three-year statute of limitations period had expired on July 12, 1998, and that, therefore, absent any equitable tolling of the applicable three-year statute of limitations, Plaintiff's complaint would be barred as untimely.  *See* Report and Recommendation dated May 20, 2008, at 2, 14.  Furthermore, Magistrate Judge Lowe found that neither the delay in typing services nor the delay in copying services constituted an extraordinary circumstance and that, even if they did, neither of those delays had prevented Plaintiff from timely filing his complaint.  *See id.* at 17-21.  Therefore, he concluded that Plaintiff was not entitled to equitable tolling of the limitations period and recommended that this Court dismiss the remainder of Plaintiff's claims as barred by the statute of limitations.  *See id.* at 15, 18, 20, 22.

Plaintiff's objections to Magistrate Judge Lowe's findings and recommendation focus on whether Plaintiff acted with reasonable diligence in pursuing his rights, which he contends is the "critical determination" for the Court to make.  *See* Plaintiff's Objections at 2.  In support of his assertion that he did exercise reasonable diligence, Plaintiff points out that he was unaware of, and never offered, the "emergency copy procedure" and that he made more than twenty-five typing requests between January 1998 and the filing of his complaint on July 30, 1998.  *See id.* at 2-3.

Furthermore, in response to Magistrate Judge Lowe's finding that he could have filed a handwritten complaint, Plaintiff simply states that "[t]his decision should not be decided on such a narrow argument, especially when the [c]omplaint was ready to be typed in January, 1998." *See id.* at 3.  Finally, Plaintiff argues that his diligence, coupled with the relatively short time in question, 18 days, warrants the Court's leniency on this issue.  *See id.* at 4.

Plaintiff does not dispute any of Magistrate Judge Lowe's conclusions with respect to the length of the applicable statute-of-limitations period, the time at which Plaintiff's claims accrued, or that, absent equitable tolling of the statute of limitations, his complaint is time-barred.[3] Therefore, the only issue that this Court needs to address is whether equitable tolling of the statute of limitations period is warranted under the circumstances of this case.

As noted, in order to equitably toll the limitations period, a plaintiff "'must show that extraordinary circumstances prevented him from filing'" his complaint on time and that he "'acted with reasonable diligence [to timely file his complaint] throughout the period he seeks to toll.'"

_____

[3] Nor could Plaintiff successfully challenge Magistrate Judge Lowe's conclusions with respect to these issues because they are neither clearly erroneous nor contrary to law.

*Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quotation omitted).  "To show that extraordinary circumstances 'prevented' him from filing his [complaint] on time," the plaintiff must show that there was a causal relationship between the extraordinary circumstances claimed and the lateness of the filing, "'a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'"  *Id.* (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).  The Second Circuit has "established only a limited number of circumstances that may merit equitable tolling, such as where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary, *see Baldayaque*, 338 F.3d at 152, and where prison officials intentionally obstruct a [plaintiff's] ability to file his [complaint] by confiscating his legal papers, *see Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000)."  *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004).

The Court agrees with Magistrate Judge Lowe's conclusion that neither the delay in typing services nor the delay in copying services constituted an extraordinary circumstance because those types of delays are "routine" and "frequent" occurrences in a prison setting.  *See, e.g., Ruiz v. Herrea*, No. 99 C 3572, 2000 WL 1273448, *5 (N.D. Ill. Sept. 6, 2000) ("photocopiers frequently jam and this is simply not the type of delay a prisoner may rely on in seeking equitable tolling").

Moreover, even if the Court were to assume that the delays in copying and typing services that Plaintiff encountered were extraordinary, Plaintiff still failed to establish the necessary causal relationship between those delays and his late filing of his complaint.  Plaintiff admitted that, in January 1998, he had drafted his complaint, that he was aware of the three-year statute of

limitations governing his complaint, and that he knew that he could both file a handwritten complaint with the Court and later file a typewritten amended complaint.  *See* Report and Recommendation dated May 20, 2008, at 7.  Despite this knowledge, Plaintiff made a personal choice not to file a handwritten complaint but, instead, to wait until his complaint was typewritten.  Whatever his personal choice, the fact remains that Plaintiff was aware of the legal requirements governing the filing of his complaint and that his complaint was ready for filing in January 1998, well in advance of the expiration of the limitations period on July 12, 1998.  Therefore, extraordinary or not, the delays in typing and copying services did not **prevent** Plaintiff from filing his complaint on time.  Accordingly, the Court agrees with Magistrate Judge Lowe that Plaintiff is not entitled to equitable tolling of the limitations period.

## IV. CONCLUSION

After reviewing Magistrate Judge Lowe's Report and Recommendation, Plaintiff's objections thereto, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Lowe's May 20, 2008 Report and Recommendation is **ADOPTED IN ITS ENTIRETY**; and the Court further

**ORDERS** that the remainder of Plaintiff's claims are **DISMISSED** as barred by the applicable three-year statute-of-limitations period; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendants and close this

case.

**IT IS SO ORDERED.**

Dated: March 28, 2009
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge